Good morning, Your Honors. May it please the Court, Christian Garris on behalf of Lux. As I imagine the panel knows, counsel for the Apley submitted yesterday updated information on the case regarding the state court action and the finality of that. So that obviously has an impact on the case because of the nature of the sort of domino effect of this indemnity agreement. And we can discuss that, but I think initially what I would like to discuss is the case or controversy requirement, the actual metamune factors. Whether there is one, a substantial controversy, two, between adverse parties, and three, a sufficient immediacy of an issue to warrant some kind of a ruling. And I think that's where the district court erred here because really for two reasons. One, there is a case or controversy between Lux and CAEAP even though now they're controlled by the same entity because the complaint of conduct took place when CAEAP was controlled by other parties. Weren't they controlled by the same parties when you filed the lawsuit? Yes, that's absolutely correct. And the only remedy sought is the declaratory relief of the validity of the indemnity agreement that CAEAP would have to indemnify Lux. So one issue is the case or controversy. Does that exist between Lux and CAEAP? I would say it does because of the temporal element of when the conduct occurred, which was when these were separate entities. Secondly, even if the court doesn't find that there's a case or controversy there, they can find one between Lux and the intervener, the Bruners. And this is an issue that I thought when I started this that there would be a lot more cases about. There would be a lot more authority on the issue. But there really isn't. There's very little. Is it most of the authority that the intervention should have never been allowed in the first place? Well, I don't know about that. It was stipulated to. Like stipulating to jurisdiction? Sure. So did the district court err in allowing the stipulation? That's an interesting question. I would say that if an intervener comes into an action and has an adverse position to the plaintiff, I think that is a case or controversy.  The Bruners came into this case not necessarily to espouse their own interests, but to litigate the issue of whether Lux could enforce this agreement against CAEAP. And the Bruners came in essentially acting on CAEAP's behalf. And I think that creates a case or controversy. So the sort of procedural issues sort of outside the parameters of this case that the court now has before it is, can an intervener create a case or controversy where one might not otherwise exist? So that's maybe a new question. What was the status of this case before the intervention? Was there a case or controversy then? So I would say yes, and it's because of when the conduct that's complained of occurred that's causing this indemnity agreement to be invoked. And so the conduct that's at issue, you know, that goes way back to the beginning is why isn't the filing of the complaint what's at issue? Whether or not at the time that the complaint was filed that there was a case in controversy creating jurisdiction before the district court. So I think it does have to be at that time in terms of the procedural element of the filing, but the factual background of it is that what's complained of is conduct that occurred when the Bruners controlled CAEAP, which is a very slight distinction, but I think it's an important one, one that's not going to obviously come up with some kind of frequency. But I think here the complaint of conduct occurred when they were definitely adversarial parties with different people in control. But then the question becomes, well, what if the court agrees and the parties stipulate that an intervener can come in and espouse positions for this defendant? Does that create a case or controversy? And I would say it does because there is a controversy between two parties. It was fully litigated. The procedural issues were fully litigated and argued in this case, and the result of it would be this indemnity can be used or it cannot. So, counsel, the case or controversy requirement has a variety of manifestations. We can talk about mootness and we can talk about ripeness and other things. One of those would be jurisdiction. If there was no diversity, for example, between A and B, and C sought to intervene, but C was diverse with respect to both A and B, would we allow intervention to cure a defect in subject matter jurisdiction? Not an issue that I believe is applicable here, but it's an interesting question. But it's sort of of the same form. That is, if we don't have jurisdiction for whatever reason, whether it's moot, whether it's the same entity so they're not really adversarial between A and B, does allowing C into the case cure any defect in the original jurisdiction of the court over the matter? I would say it does for the same reason that if there is a lack of diversity, that could be raised at any time. It's not the same rule as the removal statute where the defendant has to complain within a certain number of days or the plaintiff has to complain within a certain number of days that it was improperly removed to federal court. On diversity jurisdiction, I think the law is very clear. That can be raised significantly later if it doesn't occur to the court. But case or controversy is related to subject matter jurisdiction. That is, we do not have jurisdiction under Article III if we don't have a bona fide case or controversy. So it seems to me that that can be raised at any time. So how do we cure it here? So if it was, just to take your example, if it was a California plaintiff and a California defendant, there's not diversity, but if no one complains of it and the court doesn't act, what happens later if a new defendant comes in who's from Nevada? Now we have diversity. So we didn't have it when the complaint was originally filed, but now we do. I think in that example, it could have been raised earlier and the case could have been sent to you. Actually, you don't have complete diversity there. Well, yes, you're right. It wouldn't cure it. Yes, I'm sorry. Change the facts around to no plaintiff and defendant. But this also goes to Judge Vitaleano's question is, you know, assuming if there's a defect, if we think there's a defect in the original suit, how can bringing in a third party cure that defect? Well, let me go back to the – I'll try to do it correctly this time with the diversity issue. If a California defendant sues an entity that maybe they think is a Nevada defendant, but it turns out is a California corporation, they get the corporation wrong. And later on it's discovered that the two entities are from the same state, then it can be raised at that time. But I think when it comes to subject matter jurisdiction based on a case of controversy, if the case of controversy arises later, that would, I think, create jurisdiction. It wouldn't if there's no standing. Just like if there's a California plaintiff and a California defendant and a Nevada defendant, if the California defendant is dismissed, then you do have diversity. Even if nobody protested, if there were, for example, another kind of collusive jurisdiction in which the plaintiff doesn't have standing to raise the claim, that can be raised at any time. That's not waived. It can be raised at any time. That's correct. I agree. So the question is, does it have to be in the first instance true? And I would say if an intervener comes in and that creates a jurisdiction, if the court finds that there was no jurisdiction originally between these two parties, there was no case of controversy originally. Then you have to dismiss. Is jurisdiction measured as of the time that the case is filed? It can be, but I would argue that if an intervener comes in and there's a case of controversy between those two parties, that's sufficient to confer jurisdiction on the court because you have an argument between two parties. I suppose there might be something in which the court could realign the parties and maybe save everybody some time and trouble because the suit would simply be refiled. But the Bruners, I don't think, have any interest. Their counsel could speak for himself, but I don't think they've got any interest in having all of this realigned to keep this open. If there's no case of controversy between the two clients here, Lux and CAEAP, then the whole case goes away, and I think the Bruners would be pleased. I don't think they've got any need to perpetuate the litigation here. If there was no case of controversy at the start, the district court did not have the power to allow the Bruners to intervene. And yet it did so. Some courts do things without the power to do them, and sometimes they get reversed. Sure, I understand. And so it doesn't insulate that decision, of course. This court can decide that that decision to accede to this stipulation was an error. But I would still argue that there was a case of controversy between Lux and CAEAP from the outset. But even if that's not true, that if an intervener comes in and is allowed to participate in the case and has an adverse position to the plaintiff, that that should create a case of controversy. There is a controversy between the two parties. Counsel, would you like to reserve some time? Yes, I'll reserve the balance of my time. Did that cut you off? One quick question on a different point. Based on the submission we got yesterday, am I correct in my understanding that there is now a contractual indemnification agreement between Lux and CAEAP? There always has been a contractual indemnification agreement between the parties since 2016. I think the effect of the state court case, though, is that CAEAP's claims against the Bruners have now been basically finally dismissed. So that does create a problem for us, obviously, because even if we are able to obtain a ruling in this case that there is a right of Lux to use this indemnity agreement to get CAEAP to indemnify Lux for the Bruners' judgment, the problem is how is CAEAP going to get that money? Because now their case against the Bruners is over. So that's the problem that we have, which I just found out about yesterday. So that's a serious problem. There's no question about it. And that's why I just wanted to focus on the jurisdictional issue. And I'll reserve the balance of my time. Thank you. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the Court. Frank Gilmore on behalf of the interveners at the Lease of the Bruners. And I will take a second of my time to express my appreciation for being here in person today. It's nice to be back. I think the panel nailed it. There was never an actual controversy between the plaintiff, Lux, and the defendant, CAEAP. And it's become apparent that there was no controversy between those parties even six or seven months before the complaint was filed. Judge Vitaliano, you identified that failing in Article III standing is omnipresent. The issue here arises back as early as the March of the year before the case that brings us here today was filed when the parties collusively exchanged tender letters between the four people who were involved in the control of these two entities. And, of course, I mean the plaintiff and the defendant. Lux and CAEAP are controlled by the same four individuals, a concession which we got for the first time effectively in the opposition to the motion to dismiss. And that's when Lux finally admitted that the claims they were asserting against CAEAP had been admitted by CAEAP because the same principles had made the decision on both sides. And that confirmed not only to my clients but also to the court that this was effectively no controversy. And the reason I say, Judge, that this predated the filing is because we have correspondence in the record from Lux counsel and CAEAP counsel, Mr. Griffith, who was concurrently representing both sides, in which he delivered a letter to me that said, let me be candid, it's not clear when he sends this letter to me who exactly he's representing, but he makes statements on behalf of both sides where he definitively explains in a letter of September predating the complaint in this case that the officers of CAEAP have already decided that they have not found a viable good faith defense to the indemnity agreement and they intend to consent to it. As soon as CAEAP consents to the claims that Lux is intending to assert six months down the road in a federal action in Nevada, they have removed the possibility of any actual controversy. The metamune case says it has to be substantial, it has to be immediate, and it has to be real. The reality, if two parties have agreed that they do not have adverse legal interests, then there is no controversy. And it's true that this probably could have and should have been identified at the intervention stage. At that point, perhaps Judge Gee and in fact myself might be given a pass for not quite realizing exactly that these parties were not only going to stipulate that there was no dispute between the plaintiff and the defendant, but in fact the purpose of the lawsuit was explicit in their opposition, and that is they intended all along to goad the Bruners into intervening in this case in an effort to create a controversy that they might be able then to use to their benefit in the state court action. And the reason the Bruners intervened was not to take a position with respect to the contractual indemnity between Lux and CAEAP, but to ensure that this collusive judgment would not contain stipulated facts or stipulated conclusions that might in some way influence the state court. We know now that the state court was not going to be influenced by an indemnity judgment, whether that was entered consensually without the Bruners' involvement or whether it was done simply by contract. And the state court, Judge Vitaliano does recognize that whether there was a federal court judgment, as the state court says, an indemnity judgment or whether it was simply by contract makes no difference. That contract or that indemnity judgment was never going to provide the basis for damages in an action between CAEAP and the Bruners. So we're back to that standing issue, and that is did standing ever exist between Lux and CAEAP? And the answer is no. Could that lack of standing, could that lack of subject matter be cured by the intervention of the Bruners? The answer to that is no. First of all, there is no case in any federal circuit that I'm aware of that addresses the issue that in the event neither the parties nor the court become aware of a failure of Article III standing, that can somehow be cured after the fact by intervention. There's no case on point that discusses that, which means that the plaintiffs here are asking this court to make new law. But I would also suggest that this argument is belied by the explicit provisions of Rule 24. Counsel, sometimes a trial court will realign the parties to better express where the real interests are. Could the district court have done that? Well, not really. And here's why. Because in the federal action, the initial federal action, the claims by Lux were asserted against the Bruners that resulted in a final judgment which has been affirmed by this court. In other words, any claims that Lux might have had against the Bruners have already been decided and therefore are race judicata. The second realignment, so to speak, could have been that there is a dispute between CAEAP and the Bruners. Well, that is also race judicata because the state court has entered summary judgment in favor of the Bruners and against CAEAP on the basis that CAEAP has no damages upon which it could assert any kind of claim for fiduciary duty breached by the Bruners. So the reality is there is no controversy between the Bruners and either of these parties that could be litigated today. In other words, Judge, the court could not have said, I'm allowing the Bruners to effectively step in the shoes of CAEAP and create a controversy between Bruners and Lux that could now be adjudicated. Pointing out, and I think you've made some good points here about the race judicata effect of two different judgments. One is our judgment in Lux 1. The second is the one that just came out in May from the state court. But those are race judicata. Those are decisions on the merits, not questions that say that there's no case or controversy. I mean, there's only no case or controversy only because the matter has been decided, but that means that it's been decided on the merits. That's a very different problem from saying there's no case or controversy because you have no standing, for example. That's a fair point. For purposes of determining 12B1 issues, then we're really talking about, is there a scenario where Judge G could have said that the Bruners are going to be stepping in and taking over the positions of CAEAP? There's a couple of pragmatic reasons why that couldn't have occurred, and that is, number one, CAEAP and the Bruners were adverse to each other in the state court case, and so the idea that they were somehow aligned in the indemnity, even though they were opponents in the purpose for which this indemnity judgment was ultimately to be used in the state court judgment seems a little bit circular to me. The second issue with respect to that is Rule 24 does not give the suggestion that an intervener appears on behalf of one of the preexisting parties to the litigation. In fact, Rule 24 says you can intervene if, number one, you have an interest in the subject matter, and number two, you're appearing in order to protect the intervener's rights associated with that action, which is exactly what the Bruners did. There is no scenario where they were interested in taking a position, whether Lux and CAEAP made a closed-door collusive agreement as to who was indemnified for who. The only thing the Bruners cared about is what was CAEAP going to do with that collusive agreement, whether it was an indemnity judgment or whether it was a side agreement between the two of them that they would then present to the state court in an effort to show damages where damages did not otherwise exist. And what the state court ultimately concluded, and correctly in my opinion, is that an indemnity agreement, whether it came in the form of a judgment or whether it came in the form of a backdoor collusive agreement between the plaintiff and the defendant, was never going to be damages in the state court case that would allow a claim by CAEAP against the Bruners. And the reason for that is because there is no causal nexus between the judgment that was the indemnity judgment and the Bruners' conduct. And that is what we got confirmed by the Court of Appeals of the State of California a few weeks ago, is that even if that controversy between CAEAP and the Bruners existed, it could never be used as damages to support a breach of fiduciary duty case in the state claim in the state court against the Bruners. If the panel has no further questions for me, I think I will submit. I don't think we do. Thank you. Thank you. So, returning to this issue of whether an intervener can provide the subject matter jurisdiction, I think counsel for the Bruners has just mentioned that they intervene in this case because they want to stop a judgment that could result or some kind of a ruling that might result in the case of Lux versus CAEAP. And I think that, again, establishes a case of controversy. There's two parties fighting over some issue. And the indemnity agreement was signed between the parties that now control CAEAP and Lux and the Bruners. So that was an arm's-length transaction. The management agreement, which is not the sale of the nonprofit, but the transference of the management of the nonprofit that occurred in 2016, that's where this indemnity agreement occurs, and that was an arm's-length transaction. And that's what this whole DEC relief case is all about, solely focused on the effects of that indemnity agreement and whether it can be used by Lux to obtain indemnity from CAEAP. The Bruners intervened because they felt that if that was to take place, that would be an adverse result to them and would affect their interests. And I think that creates a case of controversy. Unless the Court has any other questions, I will submit. It does not appear that we do. I want to thank you both for your arguments. We'll take that case under advisement.
judges: BYBEE, CHRISTEN, Vitaliano